UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEMARCUS QUAMAINE CURRY,

        Petitioner,        Case Number: 5:15-cv-12115
                                      HON. JOHN CORBETT O'MEARA

v.

SHAWN BREWER,

        Respondent.
_____/

## OPINION AND ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Demarcus Quamaine Curry has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is incarcerated at the G. Robert Cotton Correctional Facility in Jackson, Michigan. He challenges his convictions for armed robbery, assault with intent to do great bodily harm less than murder, possession of a firearm by a felon, and three counts of possession of a firearm during the commission of a felony, on the grounds that he was denied a fair trial by the admission of identification testimony that was tainted by an impermissibly suggestive photographic lineup, other acts evidence was improperly admitted, and offense variables were incorrectly scored. It is apparent from the face of the petition that habeas relief is not warranted. Therefore, the Court summarily dismisses the petition.

### I. BACKGROUND

Following a jury trial in Oakland County Circuit Court, Petitioner was found guilty

as set forth above. The Michigan Court of Appeals summarized the testimony adduced at trial as follows:

> Defendant's convictions arise from the robbery and nonfatal shooting of Fred Fink outside an apartment complex in Pontiac, Michigan. The prosecution presented the testimony of Fink, a self-described Vicodin addict, who had arranged over the telephone to purchase Vicodin from a man named "Jesse." Fink later identified defendant as "Jesse." On September 7, 2011, after exchanging some telephone calls, defendant told Fink to meet him at the Newman Apartments in Pontiac to complete the transaction. A friend drove Fink from his residence in Rochester, Michigan, to the Newman Apartments. When Fink arrived, defendant was standing on the sidewalk. After greeting one another, defendant told Fink to follow him to the back of the apartments to complete the transaction. As they walked, defendant shook something in his pocket that sounded like pills in a bottle. While the men were between two buildings, defendant stopped, brandished a firearm, and demanded Fink's money. When Fink refused, defendant shot him in the leg twice. Fink then reached for the gun and defendant shot him in the leg a third time. Fink tried to run, but he fell to the ground and defendant demanded that Fink give him the "money or else." Fink gave defendant his money, and defendant fled. Two independent witnesses, who heard gunshots and observed defendant fleeing the area, directed the police to an apartment that belonged to defendant's girlfriend. An undercover police officer who was conducting surveillance on an unrelated case observed defendant enter the apartment. Defendant barricaded himself in the apartment before eventually surrendering. A firearm was recovered from the bushes outside the apartment's sliding door. Witnesses linked defendant to the firearm, and clothing consistent with the witnesses' description of the perpetrator was found inside the apartment where defendant was apprehended. The defense argued misidentification and attacked the credibility of the trial witnesses.

*People v. Curry,* No. 308027, 2013 WL 5663133, *1 (Mich. Ct. App. Oct. 17, 2013).

On January 3, 2012, Petitioner was sentenced as a fourth habitual offender to 30 to 80 years' imprisonment for the armed robbery conviction, 12 to 80 years' imprisonment for the assault with intent to do great bodily harm less than murder conviction, and 6 to 80

years' imprisonment for the felon in possession conviction, all to be served concurrently with one another and consecutively to concurrent terms of five years' imprisonment for the felony-firearm convictions.

Petitioner filed an appeal of right in the Michigan Court of Appeals raising these claims: (i) identification testimony tainted by impermissibly suggestive pretrial photographic lineup; (ii) admission of other act evidence denied him a fair trial; and (iii) offense variables were incorrectly scored. The Michigan Court of Appeals affirmed Petitioner's convictions and sentences. *People v. Curry*, No. 308027, 2013 WL 5663133 (Mich. Ct. App. Oct. 17, 2013). Petitioner raised the same claims in an application for leave to appeal in the Michigan Supreme Court. The Michigan Supreme Court denied leave to appeal. *People v. Curry*, 495 Mich. 978 (Mich. 2014).

Petitioner then filed the pending habeas petition. He raises the same claims raised in state court.

## II.  STANDARD

Upon the filing of a habeas corpus petition, the court must promptly examine the petition to determine "if it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief." Rule 4, Rules Governing Section 2254 cases. If the court determines that the petitioner is not entitled to relief, the court shall summarily dismiss the petition. *McFarland v. Scott*, 512 U.S. 849, 856 (1994) ("Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face"). The habeas petition does not present grounds which

may establish the violation of a federal constitutional right. The petition will be dismissed.

Petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that

principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (*quoting Williams*, 529 U.S. at 413). However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, —, 131 S. Ct. 770, 789 (2011), *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as

neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### III.  DISCUSSION

#### A.  Identification Testimony

In his first claim for habeas relief, Petitioner argues that his right to a fair trial was violated by the trial court's denial of his motion to suppress the identification testimony of Fred Fink. Petitioner argues that the pretrial photographic identification process was impermissibly suggestive because it was comprised only of his photograph.

The Michigan Court of Appeals rejected this claim in a thorough, well-reasoned opinion, stating, in relevant part:

> Photographic identification procedures can violate a defendant's due process rights if they are so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. *People v. Gray*, 457 Mich. 107, 111; 577 N.W.2d 92 (1998). An improper suggestion may arise when a witness is shown only one person because the witness is tempted to

presume that the photograph is of the assailant. *Id.* In this case, Fink was shown one photo. This alone might have been impermissibly suggestive. However, the inquiry does not end there. Even if a pretrial identification procedure is unduly suggestive, suppression of the witness's identification testimony is not required when there is an independent basis for the identification. *Id.* at 114–115. The independent basis inquiry requires a factual analysis, and the validity of a witness's in-court identification must be viewed in light of the totality of the circumstances to determine whether the procedure was so impermissibly suggestive that it led to a substantial likelihood of misidentification. *Id.* The following factors are considered in determining whether an independent basis exists for the admission of an in-court identification:

> (1) prior relationship with or knowledge of the defendant; (2) opportunity to observe the offense, including length of time, lighting, and proximity to the criminal act; (3) length of time between the offense and the disputed identification; (4) accuracy of description compared to the defendant's actual appearance; (5) previous proper identification or failure to identify the defendant; (6) any prelineup identification lineup of another person as the perpetrator; (7) the nature of the offense and the victim's age, intelligence, and psychological state; and (8) any idiosyncratic or special features of the defendant.

*People v. Davis*, 241 Mich.App 697, 702-703; 617 N.W.2d 381 (2000).

It is not necessary that all factors be given equal weight. *People v. Kachar*, 400 Mich. 78, 97; 252 N.W.2d 807 (1977).

Even assuming that it was impermissibly suggestive to show Fink a photograph of only one person, there was a sufficient independent basis to support the admission of Fink's in-court identification of defendant. Although Fink did not have a prior relationship with defendant, he had a substantial opportunity to observe him from a close distance. When Fink arrived at the meeting place, he observed defendant standing on the sidewalk. It was early afternoon and "broad daylight." Fink explained that he "walked right up to" defendant and they had a face-to-face conversation. Defendant confirmed that he was the person to whom Fink had spoken on the phone earlier that day. According to Fink, he could clearly see defendant's face, there was nothing between him and defendant, and

> nothing covered defendant's face. Fink explained that after following defendant from the sidewalk to the area between the buildings, they "were [again] right together face to face," and close enough to shake hands. In addition to being able to clearly observe defendant's face, Fink was able to describe defendant's height, weight, and wardrobe. Although the detective that interviewed Fink did not note that Fink mentioned a noticeable scar on defendant's face, Fink recalled that he mentioned defendant's scar to someone. In addition, Fink identified defendant within hours of the offense; he testified that he could hear and see clearly and had a clear state of mind. Fink testified that he was certain of his identification of defendant, and he had never identified anyone other than defendant as the assailant. Considering Fink's substantial opportunity to observe defendant and the totality of the circumstances, we conclude that there was a sufficient independent basis for Fink's identification.

*Curry*, 2013 WL 5663133 at *2.

An identification procedure violates a defendant's right to due process if it was so unnecessarily suggestive as to run the risk of irreparable mistaken identification. *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967); *Neil v. Biggers*, 409 U.S. 188 (1972). However, even if the confrontation was unnecessarily suggestive, if the identification is nonetheless reliable, it will be admissible. *See Manson v. Braithwaite*, 432 U.S. 98, 114 (1977); *Carter v. Bell*, 218 F.3d 581, 605 (6th Cir. 2000). The "primary evil to be avoided is a very substantial likelihood of irreparable misidentification." *Neil*, 409 U.S. at 198 (citing *Simmons v. United States*, 390 U.S. 377, 384 (1968)).

Showing a witness a single photograph of a suspect has been recognized as being extremely suggestive. *See e.g., Simmons*, 390 U.S. at 383 ("This danger [of misidentification] will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the

pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized."); *Carter v. Bell,* 218 F.3d 581, 605-606 (6th Cir. 2000). Nonetheless, in *Manson v. Brathwaite*, *supra,* the United States Supreme Court refused to adopt a *per se* rule that an identification based upon examination of a single photograph would be inadmissible at trial. *See also United States v. Causey*, 834 F.2d 1277 (6th Cir. 1987) (identification reliable despite single photo identification).

In judging reliability, the totality of the circumstances are evaluated, including the factors described in *Manson* and *Biggers*: (1) the opportunity of the witness to view the defendant at the initial observation; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the defendant; (4) the level of certainty shown by the witness at the pretrial identification; and (5) the length of time between the initial observation and the identification. *Manson*, 432 U.S. at 114; *Biggers*, 409 U.S. at 199-200.

Applying these factors, the decision of the Michigan Court of Appeals that there was a basis for the identification independent of the photograph, was neither contrary to nor an unreasonable application of federal law.

### B. Admission of Other Act Evidence

Next, Petitioner argues that he was denied a fair trial when the trial court admitted testimony regarding allegations that Petitioner was involved in another armed robbery that occurred several days before the robbery at issue in this case. The Michigan Court of Appeals rejected the claim under state evidentiary rules.

"[S]tate-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) *quoting Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). The Supreme Court has declined to hold that the admission of "other acts" evidence is so extremely unfair that it violates fundamental conceptions of justice. *Dowling v. United States*, 493 U.S. 342, 352-53 (1990). The Court has discussed when other acts testimony is permissible under the Federal Rules of Evidence, *see Huddleston v. United States*, 485 U.S. 681 (1988), but has not addressed the issue in constitutional terms. Such matters are more appropriately addressed in codes of evidence and procedure than under the Due Process Clause. *Dowling*, 493 U.S. at 352. "There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Consequently, there is no "clearly established federal law" to which the state court's decision could be "contrary" within the meaning of section 2254(d)(1). Id. at 513. Therefore, the Court denies habeas relief on this claim.

### C.  Scoring of Offense Variables

Finally, Petitioner argues that the trial court incorrectly scored offense variables 8 and 10.  It is well-established that "'federal habeas corpus relief does not lie for errors of state law.'"  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991), *quoting Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  Petitioner's argument that the state court erred in scoring his sentencing guidelines is based solely on the state court's interpretation of state law.  It does not implicate any federal rights.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review."); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("[S]tate courts are the ultimate expositors of state law.").  "[A] claim that the trial court mis-scored offense variables in determining the state sentencing guidelines is not cognizable on habeas corpus review."  *See Adams v. Burt*, 471 F. Supp. 2d 835, 844 (E.D. Mich. 2007); *see also Coleman v. Curtin*, 425 F. App'x 483, 484-85 (6th Cir. 2011).  Habeas corpus relief is not available for this claim.

### IV.  CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings requires that a court "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The substantial showing

threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court concludes that reasonable jurists would not debate the conclusion that the petition does not state a claim upon which habeas relief may be granted. Therefore, the Court will deny a certificate of appealability.

## V.  CONCLUSION

Accordingly, **IT IS ORDERED** that the petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

s/John Corbett O'Meara  
United States District Judge

Date:  July 15, 2015

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, July 15, 2015, using the ECF system and/or ordinary mail.

s/William Barkholz  
Case Manager